Filed 8/27/21  P. v. King CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C092924 |
| Plaintiff and Respondent, | (Super. Ct. No. 20CR000751) |
| v. | |
| WESLEY GEORGE KING, | |
| Defendant and Appellant. | |

Defendant Wesley George King pleaded no contest to having engaged in a lewd act with a child under the age of 14.  The trial court rejected defendant's request for probation and sentenced him to the upper term of eight years in prison.  Defendant now appeals his sentence, arguing that the trial court abused its discretion when it sentenced him to the upper term, by relying on improper aggravating factors.  We affirm the judgment.

1

## FACTS AND HISTORY OF THE PROCEEDINGS

In 2019, J. Doe, a 13-year-old, reported to her mother that she had been molested by defendant, her biological grandfather. She estimated that he had molested her about 25 times. The molestation occurred over a five-month period. The first time defendant molested J. Doe was in the basement of her family home when he grabbed her and squeezed her buttocks and gave her a kiss on the lips. Other times he would reach under her top and squeeze her breasts and play with her nipple, after which he put his mouth on her nipple.

She estimated he tried to put his finger in her vagina several times and was successful twice. She said it hurt her, and that he would try to make out with her by kissing her and putting his tongue into her mouth. The final time he molested her was in the kitchen, during which time he pulled up her top, and attempted to pull her shorts aside to reach her vagina but was unable to do so. He pulled her bra aside and fondled her breasts. He stopped when her grandmother entered the kitchen, but the grandmother did not see him molesting J. Doe. J. Doe had purposely worn tight fitting clothes on that day in an effort to make it difficult for defendant to get to her breasts or vagina, should he try to molest her.

J. Doe said defendant usually did not speak when molesting her, but would ask her afterward, "did you like that?" or would tell her "this is our little secret." Each time defendant molested her it lasted approximately 10 minutes. J. Doe eventually told her sister, who encouraged her to tell her parents. When the family confronted defendant, he admitted molesting J. Doe and said he knew what he did was wrong and that he should not have done it.

When interviewed by police, defendant said he had touched his granddaughter's breasts, "to make her happy." He admitted his contact with her was inappropriate, but said he was not planning to have sex with J. Doe because he "wouldn't do that with a

grandchild anyway." He admitted touching J Doe's vagina once while they were in the kitchen. He ran his fingers around the waistband of her shorts and panties and then "stuck my hand up one time and she was so moist that my finger went right in there." Defendant stated that his granddaughter never told him to stop and did not push him away. He denied kissing J. Doe or using his tongue with her and denied inappropriate contact in the garden or basement of the family home.

When interviewed by probation, defendant expressed that he is extremely sorry for what he did and "owns up to [his] mistake" and would never do something like this again. Defendant stated that he had lost weight, and had felt suicidal as a result of what happened. His desire was to "live out" the rest of his life with his wife in Oregon.

During sentencing, the trial court noted that factors in favor of defendant when considering probation were: "[H]e has no record. He is 79 years old, no record. He is willing to comply with probation." Factors in aggravation included: "[T]he victim was particularly vulnerable, she was in the home of her parents, of course, where her grandfather would come and visit over a period of time. There was even an occasion on which she wore a certain type of clothing, type of clothing so she wouldn't be molested. She was in a home where she was particularly vulnerable, she couldn't escape from her position unless she left her home which places her in a possession [*sic*] of being especially vulnerable. Of course, her age compared to her grandfather's age, the defendant took advantage of a position of trust. His abuse occurred over a five-month period of time, 25 times or more. The defendant inflicted emotional injury on the victim." The court noted that as the victim's grandfather, defendant was "in a position that if he were to be released, the granddaughter would have to deal with that and, frankly, she would have to deal with what happened for the rest of her life." The court sentenced defendant to the aggravated term of eight years.

After the court pronounced defendant's sentence, defense counsel argued: "I just want to make sure that there is not a waiver, that under 4.423(b)(1) that he does not have

any record. Also, under (3) he, obviously, acknowledged wrongdoing at the time of his arrest and plea. And then also there is [*sic*] a number of factors I believe that can be addressed . . . including the victim's family's wishes, his age, his health, lack of record, remorsefulness, all of which I believe were mitigating factors. I don't believe under any circumstance this should have been an aggravated term . . . " The trial court responded: "[I]t is not time to argue again. You can place matters on the record, which is fine; but to argue it again is inappropriate."

Defense counsel responded: "[W]ith the Court not giving me an indication before you start, I did not have an opportunity to put on the record the exact criteria in mitigation. That is what I am trying it [*sic*] do is to make --" The trial court responded: "I am going to allow you to do that, if there is something you think you left out; but to reargue that is inappropriate. . . . If you left something out, go ahead and state it on the record." Defense counsel then stated: "I am putting it on the record. It would be under (e), which is other factors, which is what I just indicated. So, I will submit on those comments as well, I just want to make sure there is not a waiver, because we are going to be appealing it."

The Court then noted that it had additional notes it had not put on the record: "[T]he fact that he accepted responsibility; the Court absolutely disagrees with. Because, when someone takes responsibility, they actually confess to a crime and they say what happened. And, I will read to you what the defendant said. He said that he accidentally bumped his granddaughter's breast. That is ridiculous. If you call that acknowledgement of wrongdoing, I would say it would go against the defendant.

"He said that he was not sexually aroused and he did this to make her happy. That also is something that, although it can be considered that he acknowledged some wrongdoing, when you minimize, it actually makes the defendant more of a danger, because that means in his mind he doesn't believe he did anything wrong. If he did this

4

to make her happy, that absolutely would be denying an element of the offense, one of the elements of the offenses [*sic*] that he did for his own sexual gratification.

"When admitting that he penetrated her, his 13-year old granddaughter, he said she never told him to stop and she did not push his hand away. That would be, although you could argue that he acknowledged some wrongdoing because he, when he talked about penetrating her, he said that she was moist and it just went right in. That also would not be a statement that would go in his favor.

"He also believes that this was somehow not as serious, because he only touched her using his hands. And, again, although he could, and one could argue that because he didn't penetrate her with his penis that that wasn't as serious; the Court considers that also to not be a statement that would go in his favor.

"And lastly, he said he wouldn't do that with a grandchild anyway. In this case, because it occurred 25 times over a five-month period, that statement should not be taken with any credibility.

"So, with all of those statements, I did not believe that the acknowledgement of guilt and being remorseful was as argued by defense."

## DISCUSSION

Defendant appeals on the basis that the court abused its discretion when it sentenced appellant to the upper term. Defendant argues the trial court improperly relied on the "victim's age, her 'particular vulnerability,' and [defendant's] abuse of trust as factors in aggravation." Defendant asserts, "the victim's age is an element of the offense, the victim was not more vulnerable than any other victim of such an offense, and [defendant] did not occupy a position of trust as defined under the law."

The People argue defendant forfeited his claims by failing to object to these factors before the trial court. Further, the People argue the trial court did not abuse its discretion because it did not aggravate defendant's sentence based upon the victim's age

5

alone and instead found she was particularly vulnerable in light of her age compared to defendant's age, *combined* with her familial relationship to defendant, and his perpetration of the crimes in her home. Lastly, the People argue defendant certainly abused a position of trust because of his "special status" as the victim's grandfather.

We review a trial court's decision to impose the upper term for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) A court abuses its discretion if it relies on circumstances not relevant to the decision or that "constitute an improper basis for decision." (*Id*. at p. 847.) An upper term may be based on "any aggravating circumstance" the court deems significant so long as it is " 'reasonably related to the decision being made.' " (*Id*. at p. 848.) A challenge to the sentence must show the decision was irrational or arbitrary. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978.)

The court's use of improper factors to impose the upper term is a discretionary choice that is forfeited if not brought to the sentencing court's attention. (*People v. Scott* (1994) 9 Cal.4th 331, 352-353, 356 ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal"].) We agree with the People that defendant's assertion that it was *improper* for the trial court to even consider certain factors in aggravation is forfeited, as this argument is being made for the first time on appeal. It was not sufficient for trial counsel to argue that mitigating factors should have been given more weight, as such an argument is distinct from that currently being presented. Trial counsel specifically identified that pursuant to California Rules of Court, rule 4.423, certain factors in mitigation should have been considered, and defendant wanted to make sure there was not "a waiver" of any argument that such mitigating factors applied in defendant's favor. This argument did not put before the trial court a chance to consider whether its consideration of listed aggravating factors was an abuse of discretion.

6

The same is true for defendant's argument that the trial court abused its discretion in finding the defendant abused a position of trust in perpetrating this crime.  This argument was not presented to the trial court, and therefore cannot be presented for the first time on appeal.

DISPOSITION

The judgment is affirmed.


_____
HULL, J.


We concur:



_____
BLEASE, Acting P. J.



_____
KRAUSE, J.