Filed 9/22/25  P. v. Sanchez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID PAUL SANCHEZ,<br><br>    Defendant and Appellant. | B337225<br><br>(Los Angeles County Super. Ct. No. LA055484) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Martin Herscovitz, Judge.  Affirmed.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.

A jury convicted defendant and appellant David Sanchez (defendant) of nine counts of robbery, and the trial court sentenced him to 78 years to life in prison. Years later, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) recommended, as permitted by Penal Code section 1172.1, that the trial court recall and reduce defendant's sentence for "exceptional" good behavior while in custody.[1] At a hearing to consider CDCR's recommendation, the Los Angeles County District Attorney (District Attorney) and defendant jointly recommended the court impose a 16-year sentence, which would work out to about time-served. The trial court agreed to recall defendant's sentence but imposed a new sentence that, although significantly reduced (41 years to life), was still much longer than what the parties proposed. We consider whether the court abused its discretion in reducing defendant's sentence by less than what the parties recommended.

## I. BACKGROUND

### A. *Defendant's Crimes and Convictions*

From February to April 2007, defendant committed a string of robberies at retail stores. In most but not all of the robberies, the victims saw a gun on defendant's person. During one of the robberies, defendant pointed his gun at a cashier.

The District Attorney charged defendant in an amended information with nine counts of second degree robbery. The information alleged defendant personally used a handgun in the commission of six of the robberies. It also alleged defendant had

---

[1] Undesignated statutory references that follow are to the Penal Code.

2

four prior convictions (all robberies too) that qualified as serious or violent felonies under the Three Strikes law. The information further alleged prior prison term (§ 667.5, subd. (b)) and prior serious felony conviction (§ 667, subd. (a)(1)) enhancements.

A trial jury convicted defendant on all nine counts and found true five of the six firearm use enhancements. At a bench trial on defendant's prior conviction allegations, the court found true the Three Strikes law allegations, the prior serious felony conviction enhancements, and the prior prison term enhancements. Pursuant to defendant's *Romero* motion,[2] the court struck three of defendant's four prior "strike" offenses as to seven of his counts of conviction (the court did not, however, strike the Three Strikes law allegations on the other two counts, counts one and two).

The court sentenced defendant to a total of 78 years to life in prison. The court sentenced defendant to 25 years to life on count one, plus 10 years for the personal use of a firearm allegation. (The court imposed the same term on count two, but ordered that term to run concurrent to the term on count one.) On the other counts, the court selected the middle term of three years as the base term for count three, which it doubled to six years because of the prior strike, and then added a consecutive term of 10 years for the personal use of a firearm allegation, for a total of 16 years. The court imposed one-third of the middle term doubled, which was 2 years, on six other counts, and added one-third of the personal use enhancement (3 years, four months) to three of those counts. The court ordered all the determinate terms were to be served consecutively and added five years for

---

[2]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

3

the prior serious felony conviction enhancements while striking the prior prison term enhancements.

### B. CDCR Recommends Recalling Defendant's Sentence

Pursuant to section 1172.1, subdivision (a)(1), CDCR sent a letter to the trial court in October 2023 recommending the court resentence defendant in light of his "exceptional conduct" in prison. The letter attached a cumulative case summary and evaluation report, which indicated defendant had received only one rule violation report during his incarceration (a January 2014 report of destruction of property valued less than $400) and one counseling chrono (an October 2013 report of covering a window). CDCR's letter also represented defendant had been discipline free since January 2014. The letter did not recommend a specific new reduced sentence that the court should impose.

The trial court appointed counsel for defendant. He then submitted documentation in support of resentencing, including a statement regarding his history and his plans for the future, an offer of employment as a painter upon release, proof of his participation in programs during his incarceration, a threat assessment from CDCR, letters from defendant to his victims, letters of support from family members, a series of laudatory statements from individuals who supervised or otherwise interacted with him during his incarceration, and samples of murals he painted in prison. The trial court also received a copy of defendant's central file on a CD.[3]

The District Attorney filed a response joining in defendant's request for resentencing. The District Attorney

---

[3] The CD is not included in the appellate record.

4

argued it was in the interests of justice to resentence defendant given his low number of rule violations during his incarceration, his education and employment as a painter while in prison, his participation in self-improvement programs, his low risk of recidivism, the time he already served in custody, his age (46 years old), and factors related to the determination of whether to dismiss his enhancements. The District Attorney informed the court that he had arrived at a stipulated disposition with the defense whereby defendant would be resentenced to approximately 16 years in state prison on counts 3 through 9 (including additional time based on one prior conviction), with his sentences on counts 1 and 2 to be served concurrently, and his enhancements to be dismissed.

### C. Defendant's Resentencing

The trial court held a hearing at which it indicated it had read and considered the letter from the Department of Corrections, defendant's exhibits in support of resentencing, and the District Attorney's submission in support of resentencing. The court also noted it had reviewed the original sentencing materials and the Court of Appeal decision summarizing the facts of the case even though it had presided over the trial and sentencing.

The District Attorney represented he was requesting a sentence that amounted to time served for defendant because the CDCR referral was for exceptional conduct. The court asked the District Attorney's deputy if it was in the interests of justice for someone who had committed nine armed robberies with a gun, and who had four prior armed robbery convictions, to receive a sentence of roughly two years per armed robbery, which

5

amounted to an 80% reduction in the originally imposed sentence. The Deputy District Attorney responded that, based on CDCR's recommendation, it was. Defendant for his part argued he had done an extraordinary job in prison, his crimes were connected to his former substance abuse addiction, and he remained sober while in prison. Defendant also stated he believed CDCR contemplated releasing him immediately because it prepared a release plan for him.

The court acknowledged there was a strong presumption for resentencing, but it rejected the idea that there was a strong presumption for resentencing defendant to time served for such serious crimes with such a serious record. The court stated it had given defendant the benefit of the doubt at his original sentencing, including by partially granting his *Romero* motion. It believed the sentence proposed by the District Attorney in this proceeding, however, was "totally unreasonable" and not in the interests of justice. While the court recognized defendant's conduct in prison was admirable and merited a reduction in sentence, the court was unwilling to grant him time served, or effectively 2 years per robbery. The court explained that it believed doing so would be outside the spirit of the Three Strikes Law.

The court resentenced defendant to a term of 41 years to life, down from the earlier 78-years-to-life sentence. The court reaffirmed its prior ruling on defendant's *Romero* motion, granting it as to three of the four prior convictions for counts three through nine, but denying it as to counts one and two. Using count three as the base term, the court selected the low term of two years, based on defendant's behavior and the presumptions in laws that had been enacted since defendant's

6

original sentencing. The court doubled the two-year term for the prior "strike" conviction and added one third of the midterm doubled for counts four through nine, which was 12 years, leading to a total determinate sentence of 16 years. The court then sentenced defendant to a consecutive term of 25 years to life based on counts one and two, with the second 25 year to life sentence to run concurrent to the first.

Defendant asked the court to reconsider and to give him only a determinate sentence on counts one and two. The court stated it had considered doing so, but "the reason I did not was I think the next time the defendant is eligible for parole that will keep him on track. He'll know he has to face a parole board before he's released. If he was to receive a determinate sentence, he would have no great incentive to do that. So I thought about that and I decided against it." When defendant and the People argued for a further reduction, the court stated, "Maybe I didn't make it clear. I struck the 667(b) allegations. I struck the 667(a) allegations. I'm striking [from] count three, the use allegation; that is more than enough credit for the good behavior up to this point."

## II. DISCUSSION

The statute in question, section 1172.1, vests ultimate decision-making authority in the trial court, not in the parties or CDCR. The appropriate amount of a sentence reduction is accordingly a quintessential discretionary call, and there is no basis to say the amount chosen by the trial court here was error. The record demonstrates the trial court understood applicable law, thoughtfully considered the issue before it, and significantly

7

reduced defendant's sentence.  That, in our view, precludes reversal under the applicable standard of review.

Section 1172.1, subdivision (a)(1) authorizes a trial court, "at any time upon the recommendation of" CDCR to "recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, whether or not the defendant is still in custody, and provided the new sentence, if any, is no greater than the initial sentence."  The court is empowered, in the interests of justice, to "[r]educe a defendant's term of imprisonment by modifying the sentence." (§ 1172.1, subd. (a)(3)(A).)  When a request for recall and resentencing is initiated, the statute provides for "a presumption favoring recall and resentencing of the defendant . . . ." (§ 1172.1, subd. (b)(2); *People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040.)  However, once a sentence is recalled, "the sentence ultimately imposed by the court is left to its discretion without any further application of the presumption."  (*People v. Braggs* (2022) 85 Cal.App.5th 809, 820.)

When a court grants a request to recall and resentence under subdivision (a) of section 1172.1, it "shall apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing."  It "shall" also "consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued

8

incarceration is no longer in the interest of justice." (§ 1172.1, subd. (a)(5).) Our review of a trial court's section 1172.1 determination is for abuse of discretion. (*People v. Gonzalez* (2024) 107 Cal.App.5th 312, 323; see also *People v. Superior Court (Alvarez)*, 14 Cal.4th 968, 978 [a trial court's sentencing decision "will not be reversed merely because reasonable people might disagree"].)

The trial court did not abuse its discretion here; at most, the extent to which defendant's sentence should have been even further reduced is an issue about which reasonable people could disagree. Defendant had made significant, positive changes to his life while incarcerated, and the court was required to consider those postconviction factors. However, the court was not required to make its decision solely based upon defendant's record while in prison. Rather, it was directed to "apply the sentencing rules of the Judicial Council" (§ 1172.1, subd. (a)(1)), which also permit the court to consider a variety of factors in aggravation and mitigation, including factors relating to the defendant and factors relating to the crime. (Cal. Rules of Court, rules 4.420-4.423.)

Considering the whole picture, the trial court reasonably rejected the proposal to sentence defendant to, as the court noted, what would amount to about two years for each of the nine robberies—some armed. Defendant had been released from parole following his earlier strike offenses for less than a year before he committed the string of robberies that led to his present convictions. His prior felony convictions were also for robberies. Though defendant's progress while in prison is laudable, the trial court's decision to recognize that progress with a reduction in

sentence by nearly half of the non-indeterminate component was well within the range of reasonable options.[4]

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

HOFFSTADT, P. J.

MOOR, J.

---

[4] Insofar as defendant contends the trial court failed to consider certain facts, like his age and current sobriety, the record does not support the contention. The court stated it reviewed all of the documents submitted in support of resentencing, which included references to those facts. Further, the court's remarks indicate the court disagreed with the parties' evaluation of the significance of those facts, not an unawareness of those facts.